**VARDON GOLF COMPANY, INC., Plaintiff,**

v.

**BBMG GOLF LTD., an Illinois corporation d/b/a Pro Golf of Chicago and Pro Golf Discount, Defendant,**

and

**Dunlop Slazenger Corporation, Third-party Defendant.**

No. 91 C 0349.

United States District Court, N.D. Illinois, Eastern Division.

July 15, 1994.

Dillis V. Allen, Elk Grove Village, IL, for plaintiff.

Edward W. Moltzen, Bresler, Brenner, Moltzen & Harvick, Chicago, IL, Anthony M. Lorusso, Lorusso & Loud, Boston, MA, Jeffrey H. Hornstein, Holleb & Coff, Chicago, IL, for defendants.

## *ORDER*

BOBRICK, United States Magistrate Judge.

Before the Court are two motions of plaintiff Vardon Golf Company, Inc. ("Vardon") namely: PLAINTIFF'S MOTION UNDER RULE 37 TO COMPEL DUNLOP TO RESPOND TO CERTAIN OUTSTANDING REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND INTERROGATORIES, and PLAINTIFF'S MOTION UNDER RULE 37 TO COMPEL DUNLOP TO RESPOND TO OUTSTANDING REQUESTS FOR ADMISSIONS.

## I. *INTRODUCTION*

At issue in this case is the alleged infringement of the Raymont U.S. Patent No. 3,847,399. The Raymont patent covers a reinforcing structure which allegedly has application as a reinforcement to the striking face of metal wood golf club head.[1] According to

---

1. For the uninitiated a "metal-wood" golf club is a club made entirely of metal, being the technologically correct improved replacement of the venerable "wood" club, having substantially the

Vardon, third-party defendant Dunlop Slazenger Corporation ("Dunlop") manufactures, assembles, and/or sells metal wood golf clubs that allegedly infringe upon the Raymont patent. Dunlop denies having had knowledge of the Raymont patent prior to the initiation of this litigation, and Vardon does not allege that Dunlop willfully infringed on the Raymont patent.

The parties have engaged in extensive discovery, including multiple sets of production requests, interrogatories, and requests to admit. A number of disputes arose during the course of discovery, and Vardon now moves the court to compel Dunlop to respond to nine different production requests, three interrogatories, and two requests to admit. The parties have been unable to resolve the disputes among themselves, pursuant to General Rule 12 of this court.

Dunlop claims that it has adequately complied with many of the discovery requests, but it declines to respond to Vardon's discovery that seeks materials entitled to work-product privilege, that seeks information that is otherwise barred because the information sought is inadmissible under the Federal Rules of Evidence, and to discovery that is not reasonably calculated to lead to the discovery of other admissible evidence. We will examine each disputed item according to the nature of the response asserted by Dunlop.

## II. *ADEQUATE COMPLIANCE*

Federal Rule of Civil Procedure 37 is the mechanism by which the parties can turn to the court for resolution of discovery disputes. A party failing to answer an interrogatory under Fed.R.Civ.P. 33 or denying inspection of documents under Fed.R.Civ.P. 34 is subject to an order compelling the party to answer the interrogatory or to permit inspection; failing to comply with such an order compelling discovery could result in court ordered sanctions. Under Fed.R.Civ.P. 36, an inadequate response to a request to admit may result in the court determining that the matter in the request is admitted or that an

amended answer be served. As a threshold matter, however, we first need to determine whether the responses to the discovery requests are, in fact, adequate.

## III. *PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS*

### A. *Request No. 1—Plaintiff's Second Request For Production*

■ Request No. 1 of Vardon's Second Production Request seeks samples of all metal wood golf club heads offered for sale by Dunlop from March, 1985 to present. Dunlop responded to this request by offering to make all metal wood golf club heads presently offered for sale by Dunlop available for inspection at its offices in Greeneville, South Carolina. Vardon claims that Dunlop's response is inadequate because it does not speak to clubs discontinued by Dunlop and no longer offered for sale. On this score, Vardon has a point. We note, however, that Fed.R.Civ.P. 34 speaks only to items within the "possession, custody, or control of the party upon whom the request is served." Accordingly, we will order Dunlop to make all golf club heads in its possession, custody, or control available for Vardon's inspection, but Dunlop shall not be required to make available for inspection golf club heads not in its possession, custody, or control. Dunlop further refused to make available golf club heads presently in production because the Raymont patent has expired and those golf club heads are not relevant to the infringement of the Raymont patent. We agree with Dunlop and exclude those golf club heads from the scope of this order. Accordingly, to the extent indicated above, Vardon's motion to compel with regard to Request No. 1 of its Second Production Request will be granted.

### B. *Request No. 2—Plaintiff's Fourth Request For Production (and Interrogatory No. 1—Plaintiff's First Set of Interrogatories)*

■ Request No. 2 of Vardon's Fourth Production Request seeks a list of metal

same shape, golf properties, and purpose as those clubs formally made of wood. With this understanding, we pause to reflect that in this age of technological change, where tradition has

no market value, one wonders whether the fate of the terms "niblick" and "mashie" will likewise follow the fate of the "wood."

woods assembled or sold between January, 1985 to present. Interrogatory No. 1 of Vardon's First Set of Interrogatories seeks a list of all metal woods assembled, manufactured, or sold in the United States from January, 1985 to present, and other information regarding the clubs listed. We are unable to discern any meaningful difference between the information sought in the two discovery requests, and are inclined to treat Dunlop's supplemental answer to the interrogatory question as being sufficient compliance with the production request, even though Dunlop has objected to the production request and refused to comply. The question then is whether Dunlop has satisfactorily answered the interrogatory.

Vardon's principal complaint with Dunlop's answer is that five clubs were allegedly omitted from the list in Dunlop's supplemental answer. Dunlop replies that it provided all responsive information to Vardon's outside counsel pursuant to a protective order entered earlier by Magistrate Judge Rosemond. If the identification of certain clubs is in fact missing from Dunlop's response, then the omissions are a proper subject of impeachment when this matter goes to trial. Based upon the submissions of the parties, this court simply cannot say whether the identification of any clubs is in fact missing from the list. Therefore, Vardon's motion to compel in this regard will be denied.

C. *Request No. 2—Plaintiff's Second Request for Production and Request Nos. 15 and 16—Plaintiff's Fourth Request for Production*

Three production requests target club heads which, at the direction of defendant's counsel, have been cut open for inspection. Request No. 2 of Vardon's Second Production Request seeks all metal wood golf club heads that have been cut open to expose the rear surface of the striking face. Request No. 15 of Vardon's Fourth Production Request seeks cut-open samples of metal woods in production or offered for sale from January, 1985 to present. Request No. 16 of that same production request seeks all photographs of cut-open samples of metal woods. The defining characteristic of these production requests is that each request seeks ma-terials developed at the request of Dunlop's attorneys, namely club heads which have been cut open, and documents regarding those club heads. This shared characteristic of the production request, we believe, brings the items sought within the scope of the work product privilege.

### Work Product Privilege

Federal Rule of Civil Procedure 26(b)(3) creates a limited privilege against discovery for work product materials. For an item to qualify as work product, it must be (1) a document or tangible thing (2) prepared in anticipation of or in preparation for litigation and (3) prepared by or for a party or that party's representative. *Bohannon v. Honda Motor Co. Ltd.*, 127 F.R.D. 536, 538–39 (D.Kan.1989). An item is work product only if it is primarily concerned with legal assistance. *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 519 (N.D.Ill.1990). Once an item is determined to be work product, we must next determine whether the claimed work product is non-opinion work product or opinion work product. *Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir.1992). An item is opinion work product, and is therefore absolutely privileged from discovery, if it contains the mental impressions, conclusions, opinions, or legal theories of an attorney. *Id.; United States v. Pepper's Steel & Alloys, Inc.*, 132 F.R.D. 695, 698 (S.D.Fla.1990). If the item is non-opinion work product, it is subject to discovery if the party seeking production has substantial need of the material and it cannot be obtained without undue hardship. *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. at 520. A party claiming an item as work product has the burden of offering a specific explanation why the item is privileged from discovery. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84 (N.D.Ill.1992). Dunlop has asserted the work product privilege in response to seven different requests.

In the instant case we know that Dunlop's attorneys, after the initiation of this litigation, directed that an inquiry be made into certain of Dunlop's metal-wood golf clubs. In this regard, it seems to us that this

inquiry, which lead to a selection process in which certain of Dunlop's metal-wood clubs were chosen to be cut open, while others in its large inventory of clubs were not, represented discrete thought processes and the mental impressions or opinions of the attorney.

It has been long held that opinion work product is entitled to absolute privilege from discovery. *Sandburg v. Virginia Bankshares, Inc.,* 979 F.2d 332, 355 (4th Cir.1992). In *Sporck v. Peil,* 759 F.2d 312, 315 (3rd Cir.1985), the court noted that privacy of preparation is essential to preserving the attorney's adversarial role that is the central justification for the work product privilege. Selection of certain pieces of evidence from a mass of evidence is an important part of an attorney's preparations. *Sporck,* 759 F.2d at 316. Should an attorney's efforts to prepare not be kept private, the interest of the client would be ill-served because it would put the attorney to the choice of preparing adequately or revealing his strategies. *Id.* at 317. Therefore, the attorney's selection process must be protected by the work product privilege. *Id.* Dunlop's selection of some (or all) clubs to be cut open is opinion work product, as the selection of those clubs is important preparatory activity reflecting Dunlop's assessment of its potential liability for infringement of the Raymont patent.

The selection of the clubs to be cut open is strongly indicative of the mental impressions, conclusions, opinions, or legal theories of Dunlop's attorneys, since Dunlop's club heads are not cut open during the ordinary course of business, and that each club head chosen to be cut open was done so at the direction of its attorneys in response to this litigation. Each particular club to be cut open for inspection was selected by Dunlop's counsel after the start of this litigation. The selection process involved thus clearly implicates the mental impressions, conclusions, opinions, or legal theories of the attorneys for Dunlop. What Vardon seeks in Request No. 2 of its Second Request for Production, and Requests 15 and 16 of its Fourth Request are not samples of all clubs manufactured, assembled, or sold during the infringement window, but a subset of those clubs—

i.e., clubs which have been selected by Dunlop to be cut open in a discrete way. If certain club heads were cut open, the pattern of selection by Dunlop's attorney may reveal a great deal about Dunlop's assessment of its own liability. For instance, it may indicate that Dunlop believes that only clubs having a certain face size infringe on the Raymont patent. If all club lines were cut open, it may reveal that at one time Dunlop believed it possible that all of its club lines potentially infringed upon the Raymont patent.

Further, the taking of photographs of the cut-open samples involves an additional layer of opinion work product. In selecting which club head to photograph, which features of the club heads to photograph, and what angle to take the photographs from, the attorney makes a number of decisions about which club heads and what features of the club heads potentially infringe upon the Raymont patent. Production of the photographs would reveal both layers of the attorney's thought processes, as such, the absolute privilege which is accorded these materials bars discovery of the items sought. Accordingly, Vardon's motion to compel with regard to Request No. 2 of its Second Production Request, and Request Nos. 15 and 16 of its Fourth Production Request will be denied.

### D. *Request No. 1—Fourth Production Request*

■ In this request, Vardon seeks production of all documents relating or referring to the Raymont patent. Dunlop asserts the work product privilege in response, claiming that prior to being made a party to this litigation, it had no documents relating to the Raymont patent. Dunlop argues that the documents now in existence were created solely for litigation purposes and are clearly covered by the work product privilege, as the documents fit the classic definition of work product. It appears undisputed that documents currently in the possession of Dunlop, relating to the Raymont patent, were prepared for litigation. Thus, any documents relating to the Raymont patent would of course reflect Dunlop's legal assessment of the validity of the patent, or of its own possible infringement of the patent.

Vardon, boldly, but without any explanation, asserts that these production requests seek the production of all prior art and all prior public uses in Dunlop's possession, and as such are amenable to discovery. We fail to follow the logic or import of Vardon's assertion.

▇▇▇ We know that "public use" is any use of a device by any person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor. *DTA Corporation v. J & J Enterprises,* 715 F.Supp. 290, 292 (C.D.Cal.1988). As such, it describes an event, not a document, which apparently is what Vardon seeks. "Prior art" is any relevant knowledge, acts, descriptions, or patents which pertain to, but pre-date the invention in question. *Mooney v. Brunswick Corp.,* 663 F.2d 724, 733 (7th Cir.1981). Even if we were to take this unclear and poorly articulated request as seeking production of documentary evidence of prior public uses or prior art, Vardon would nonetheless not be entitled to production of these documents. To be entitled to production of a class of documents, a party must describe the materials with sufficient specificity. *Geophysical Systems Corp. v. Raytheon,* 117 F.R.D. 646, 648 (C.D.Cal. 1987). Vardon's request merely refers to all documents "relating to or referring to" the Raymont patent. This request is too vague to support any motion for production, let alone a motion to compel. A reasonable person reading the request would not comprehend evidence of prior public uses and of prior art to be within its scope. We will not compel Dunlop to respond to a production request too vague to follow.

Finally, Vardon has failed to establish (or even claim) any substantial need for the documents prepared by Dunlop. This being the case, we can not conceive of any way in which Vardon can overcome the work product privilege claimed by Dunlop for the documents requested. Accordingly, Dunlop's motion to compel production of these documents will be denied.

### E. *Request No. 18—Fourth Production Request*

▇▇▇ Request No. 18 of Vardon's Fourth Production Request seeks production of all test results, test set-ups, and authorizations for tests reflecting on the infringement or non-infringement of the Raymont patent. Again, Dunlop has properly asserted the work-product privilege in response to this request, as these tests are indeed work product.

Until this litigation was initiated by Vardon, Dunlop had no knowledge of the Raymont Patent. In order to prepare a defense in this lawsuit, attorney initiated tests were conducted. We easily conclude that the purposes of these tests reflect the attorney's opinions, impressions, and strategy in litigating the patent infringements claims. As such, this test data falls within the textbook definition of work product. The tests clearly would reflect Dunlop's assessment of its own liability; there would be no purpose for the tests but for this litigation. The request does not seek tests on golf clubs generally, but only those reflecting on infringement or non-infringement of the Raymont patent. Dunlop had no cause to test for infringement on the Raymont patent prior to the start of this litigation as it was unaware of its existence. Therefore, any test that may have been performed would have been in preparation for litigation. The selection of the tests and test data would surely reflect the attorney's strategy in defending the patent claim and thus the work product privilege clearly applies. Even if we were to find that the work product was non-opinion work product, Vardon's claim for its production would nonetheless fail.

▇▇▇ It is well accepted that non-opinion work product is discoverable upon a showing of substantial need for the materials, and an inability to obtain substantial equivalents without undue hardship. *In re Air Crash Disaster at Sioux City, Iowa,* 133 F.R.D. at 520. Vardon asserts that Dunlop should be required to produce the information because without it, Vardon will be unable to duplicate the tests. This unsubstantiated submission falls miserably short of the required showing to overcome the privilege.[2]

---

**2.** Vardon relies on *Loctite Corp. v. Fel–Pro, Inc.,* 667 F.2d 577 (7th Cir.1981) to support its claim

Even assuming that Vardon has a substantial need for test results reflecting on the infringement or non-infringement of the Raymont patent, the fact remains that nothing prevents Vardon from running tests of its own to show that Dunlop has infringed upon the Raymont patent. Any particular test it runs will provide substantial equivalents to any of the tests run by Dunlop. Vardon might not have the same tests as Dunlop, but it would have tests, nonetheless, relating to the same ultimate issue—whether or not Dunlop infringed upon the Raymont patent. We find that the work product privilege bars discovery of the documents sought in Request No. 18 of Vardon's Fourth Production Request, and requires that we deny Vardon's motion to compel a response.

### F. Request No. 23—Fourth Production Request

██ Vardon seeks communications, notes, and memoranda between employees of Dunlop relating to the alleged infringement of or validity of the Raymont patent. As earlier mentioned, Dunlop had no knowledge of the Raymont patent prior to the start of this litigation. Accordingly, all documents prepared by or for Dunlop, or its attorneys, relating to the Raymont patent are work product because they were created in preparation for this litigation. In response to Dunlop's claim of privilege, Vardon argues that communications amongst employees of a party, not in response to an attorney, are not covered by the work product privilege. This argument is undermined by the plain language of Rule 26(b)(3), which extends the work product privilege to agents of a party to the litigation. Employees of a party are agents of the party, and work product prepared by them are privileged, even if not prepared in response to an attorney. *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. at 520. Vardon does not claim substantial need for these documents, and thus cannot overcome the work product privilege.

We reject Vardon's argument, and uphold the claimed privilege in denying the Request.

### G. Request No. 28—Fourth Production Request

██ Vardon's final production request in its motion seeks production of all documents, including legal opinions upon which Dunlop bases a claim that it did not infringe the Raymont patent. Vardon asserts that it is entitled to discovery of these items because they relate to the issue of a possible willful infringement of the Raymont patent. Vardon has not yet plead a willful infringement, and concedes that it does not have any factual basis for so charging. Nonetheless, it concludes that it is entitled to discovery on this issue so that it might add an allegation of willfulness, if one is warranted. It argues that a refusal to produce the opinions will later bar Dunlop from producing the opinions to refute a charge of willfulness.

We find that the materials sought constitute core opinion work product absolutely privileged from discovery. Prior to the initiation of this litigation, Dunlop had no documents relating to the Raymont patent. Any documents generated by Dunlop employees or attorneys have obviously been created in preparation for litigation. The documents sought reach to the heart and soul of Dunlop's attorney's mental impressions, conclusions, opinions, or legal theories regarding its assessment of its liability for infringing upon the Raymont patent. The defining characteristic of the sought after documents is that they relate to particular legal conclusions—that Dunlop did or did not infringe upon the Raymont patent. Dunlop has properly asserted the work product privilege as to these documents.

██ We disagree with Vardon's contention that Dunlop must now produce these documents or be barred from introducing them later in defense of a charge of willful

that the tests are factual in nature and that its lack of knowledge of the tests makes them subject to production. We find the case inapposite to the situation in the instant case. *Loctite* dealt with a chemical patent, where there is no way to show that elements exist in the accused product without utilizing highly technical tests performed

by experts; in this case *plaintiff* refused to produce the requested tests that allegedly showed the existence of the infringing ingredients. *Loctite* at 582. Vardon, the plaintiff herein, can easily perform its own tests to substantiate its own patent infringement claim.

infringement. Vardon has not charged a willful infringement, and concedes that it now lacks any basis for such a charge. Opinions of counsel as to infringement may be offered in defense of a willful infringement charge. *Intex Plastic Sales v. Hall*, 20 U.S.P.Q.2d 1367, 1991 WL 270167 (N.D.Cal.1991). No charge has been made here of a willful infringement, and as such, there is no need for discovery of any possible defenses to a willful infringement. Because a willful violation is not at issue here, we will not put Dunlop to the choice of either protecting its work product or allowing discovery of the documents in aid of defending itself against a possible but unpled willfulness charge. *See Gaull v. Wyeth Laboratories, Inc.*, 687 F.Supp. 77, 83 (S.D.N.Y.1988). Vardon's motion to compel a response to Request No. 28 will be denied.

## IV. PLAINTIFF'S INTERROGATORIES

### A. Discovery and the Federal Rules of Evidence

A fundamental tension exists between the liberal discovery provisions of the Federal Rule of Civil Procedure and the various exclusionary rules found in the Federal Rules of Evidence. Fed.R.Civ.P. 26(b)(1) permits discovery of any item relevant to any claim or defense of any party. The liberal discovery policies of the federal courts are based upon a desire for full disclosure before trial. On the other hand, the Federal Rules of Evidence exclude from the consideration of the fact-finder certain items of evidence. These exclusions are also based on sound policy, usually the undesirability of allowing that evidence before the fact-finder or the potential for misuse of that evidence. An item which would be inadmissible at trial is discoverable if the information sought appears to be reasonably calculated to lead to the discovery of admissible evidence. Fed. R.Civ.P. 26(b)(1). When an item is inadmissible as evidence at trial because of an exclusionary rule, the question then becomes whose burden it is to establish that the item is reasonably calculated to lead to the discovery of admissible evidence.

This question has received surprisingly little treatment in the published opinions. Courts considering the issue have divided on whether it is the burden of the proponent or opponent of discovery to establish that the evidence sought is reasonably (or not reasonably) calculated to lead to the discovery of admissible evidence. Those courts placing the burden on the proponent of discovery follow *Bottaro v. Hatton Associates*, 96 F.R.D. 158 (E.D.N.Y.1982). Courts placing the burden on the opponent of discovery to show that the evidence is not likely to lead to the discovery of admissible evidence follow *Bennett v. LaPere*, 112 F.R.D. 136 (D.R.I. 1986). The *Bottaro* court held that because Congress intended to exclude certain items of evidence, the burden should be placed upon the proponent of discovery to make some "particularized showing" of a likelihood that admissible evidence will be generated by discovery of the information. 96 F.R.D. at 160. The *Bennett* court rejected *Bottaro*, reasoning that *Bottaro* misconceived the Congressional intent and the basis of the policies underlying the exclusionary rule. *Bennett*, 112 F.R.D. at 139–40. It concluded that policies favoring sweeping discovery mandate placing the burden of proving that the information sought is not reasonably calculated to lead to the discovery of admissible evidence on the opponent of discovery. *Id.* at 140.

We believe that the *Bottaro* approach represents the proper course. The policies underlying exclusionary evidentiary rules have an equal if not stronger basis in our policy as the policies favoring sweeping discovery. The more logical approach to reconciling these divergent policies follows the path of *Bottaro*. To place the burden of proving that the evidence sought is not reasonably calculated to lead to the discovery of admissible evidence on the opponent of discovery is to ask that party to prove a negative. This is an unfair burden, as it would require a party to refute all possible alternative uses of the evidence, possibly including some never imagined by the proponent.

We think, however, the *Bottaro* court overstated the nature of the proponent's burden. The Federal Rules of Civil Procedure do not speak to a "particularized showing," but to what is "reasonably calculat-

ed to lead to the discovery of admissible evidence." Therefore, we hold that where information sought in discovery would not be admissible due to an exclusionary rule in the Federal Rules of Evidence, the proponent of discovery may obtain discovery (1) by showing that the evidence is admissible for another purpose other than that barred by the Federal Rules of Evidence or (2) by articulating a plausible chain of inferences showing how discovery of the item sought would lead to other admissible evidence. The proponent may do this by simply articulating what kind of information it reasonably expects to find in the documents sought and how this will lead to other admissible evidence. The proponent need not show that the information expected is in fact in the items sought, but need only articulate why it is reasonable to believe that information of that nature would be revealed were discovery permitted. Applying this standard, we turn to the two remaining items.

### B. *Interrogatories No. 1—Plaintiff's Second Set of Interrogatories*

 Interrogatory number 1 of Vardon's Second Set of Interrogatories seeks information relating to settlement negotiations between Vardon and Dunlop. Dunlop has objected to the question on the grounds that Fed.R.Evid. 408 makes evidence relating to settlement negotiations inadmissible to prove the validity of the claim or its amount. Vardon counters that evidence of settlement negotiations is admissible on the question of a reasonable royalty. We view Vardon's argument as ignoring the obvious: that the amount of a reasonable royalty does relate, as a matter of fact, directly to the amount of a claim. This being the case, settlement evidence would be barred under Fed.R.Evid. 408. Additionally, Vardon has made no showing that the settlement evidence is reasonably calculated to lead to discovery of other admissible evidence. Accordingly, since the interrogatory seeks inadmissible evidence, and since Vardon has made no showing that the interrogatories are reasonably calculated to lead to discovery of other admissible evidence, Vardon's motion to compel will be denied.

We believe there is other ample support to our conclusion that information relating to settlement negotiations is not subject to discovery in this case. The court in *Universal Athletic Sales Co. v. American Gym*, 480 F.Supp. 408, 414 (W.D.Pa.1979) specifically relied upon Fed.R.Evid. 408 in holding that amounts paid in as settlements may not be used to compute a reasonable royalty. In so holding, we believe the *Universal Athletic Sales Co.* court took a reasonable and correct course. From our own experience we know that many factors come into play in reaching and obtaining settlement and, as such, settlement payments could not be a reliable guide for computing the value of a reasonable royalty. For instance, a party may wish to avoid incurring attorney's fees or other litigation expenses. It may wish to avoid the distraction caused by litigation, or avoid the negative publicity which attends litigation. A party may value its privacy, and be willing to settle a case to preclude discovery into its affairs. A settlement may also more reflect the parties' perceptions of the true merits of the claim and not the true value of the claim, if the claim was in fact a valid one. Because settlement often lacks reliability as to the true value of a claim, other courts have also rejected settlements as a factor in computing the reasonable royalty. *See also, Tights, Inc. v. Kayser–Roth Corp.*, 442 F.Supp. 159 (M.D.N.C.1977) and *Faulkner v. Gibbs*, 199 F.2d 635 (9th Cir.1952). Instead, in computing a reasonable royalty, courts rely upon factors such as existing royalties, rates previously charged by the patentee, and industry standards. *See generally,* Annotation, Factors to be Considered in Determining a "Reasonable Royalty" for Purposes of Calculating Damages for Patent Infringement under 35 U.S.C.S. § 284, 66 A.L.R.Fed. 186 (1984). Any offers by Dunlop to settle this litigation do not provide a reliable guide for the value of a reasonable royalty, and therefore may not be used to compute a reasonable royalty.

The cases cited by Vardon are distinguishable from the matter at hand. *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551 (Fed. Cir.1983) involved a license to an uncontested patent. Here, Dunlop is contesting whether its products infringe the Raymont patent,

thus making *Deere & Co.* inapplicable to the present case. *Stickle v. Heublein, Inc.,* 716 F.2d 1550 (Fed.Cir.1983) and *Studiengesellschaft Kohle m.b.H. v. Dart Industries, Inc.,* 862 F.2d 1564 (Fed.Cir.1988), both involve analysis of reasonable royalties after liability has been established. In this case, liability has not been established, and any settlement negotiations may be colored by other considerations noted above. Finally, Vardon's reliance upon Judge Lindberg's ruling in *Antonious v. Wilson Sporting Goods,* 89 C 6675, 1990 WL 186582 (N.D.Ill.1990) is sorely misplaced. The court, in that case, allowed admission of evidence of negotiations prior to the filing of any claims, but excluded any evidence of negotiations after the start of litigation. Obviously, negotiations here began after litigation; even *Antonius* does not provide authority for admitting the evidence.

The purpose of Fed.R.Evid. 408 is to create a protected area in which parties can work to reach a negotiated settlement to their litigation without prejudice to their substantive rights. David W. Louisell and Christopher B. Mueller, Federal Evidence § 170 rev. vol. 2 (1985). The policy favoring freely-negotiated settlements is one of the strongest in the federal courts, and is enshrined in Fed.R.Evid. 408's exclusionary rule. Compelling answers to this interrogatory would make the negotiations of the parties a part of the court record, and could potentially prejudice the substantive rights of Dunlop. Eliminating the possibility of such prejudice was a moving force behind the adoption of Fed.R.Evid. 408. Allowing discovery regarding the negotiations between parties to ongoing litigation could very easily have a chilling effect on the parties' willingness to enter into settlement negotiations, and we are reluctant to take any action which may impede an amicable resolution of this difficult controversy. Therefore, we will not use the court's power in a manner which might interfere with an agreed resolution of this litigation. Vardon's motion to compel answers to Interrogatory No. 1 of Plaintiff's Second Set of Interrogatories will be denied.

### C. *Interrogatory No. 4—Plaintiff's Second Set of Interrogatories*

■ Interrogatory No. 4 of Vardon's Second Set of Interrogatories seeks information relating to the efforts of Dunlop to modify the reinforcement for its club heads after it first became aware of the Raymont patent. Dunlop objected to this interrogatory, claiming that under Fed.R.Evid. 407, information relating to subsequent remedial measures is inadmissible and that the question is not otherwise reasonably calculated to lead to the discovery of admissible evidence. Vardon counters that Fed.R.Evid. 407 applies only to negligence cases and that the actions of Dunlop taken after it learned of the Raymont patent is relevant to prove a (as of yet unpled) willful infringement. The evidence sought by Vardon falls squarely within the prohibition of Fed.R.Evid. 407, and as Vardon has not shown that the information could be used for another purpose other than to prove culpable conduct, we will deny its motion to compel Dunlop to answer Interrogatory No. 4 of Plaintiff's Second Set of Interrogatories.

Fed.R.Evid. 407 provides:

When, after an event, measures are taken, which if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The purpose of Fed.R.Evid. 407 is to create an incentive to take measures which, had they been taken before, would have avoided the event which precipitated the litigation by preventing the use of evidence of such measures against the party taking them. David W. Louisell & Christopher B. Mueller, Federal Evidence § 163 rev. vol. 2 (1985).

■ "Culpable conduct" as used in Fed.R.Evid. 407 has a broader scope than just negligent conduct, and we think its scope broad enough to reach patent infringement actions. The Seventh Circuit disposed of Vardon's argument that Fed.R.Evid. 407 applies only to negligence actions in *Flaminio v. Honda Motor Co.,* 733 F.2d 463, 469 (7th

Cir.1984), where it held that Fed.R.Evid. 407 was applicable to strict products liability actions, not just negligence actions. In so holding, it noted the distinction between strict products liability actions and negligence actions. *Id.* at 469. In a negligence action, the focus is on the defendant's conduct, while in a strict products liability action, the focus is on the dangerousness of the product without regard to the conduct of the defendant. *Id.* The court specifically rejected plaintiff's argument that since a strict products liability action does not involve culpable or "blameworthy" conduct, Fed.R.Evid. 407 would not apply. *Id.* The reasoning of *Flaminio* controls our decision. While non-willful patent infringement does not involve blameworthy conduct and focuses on the product without regard to the conduct of the defendant, changes to the product after Dunlop discovered the existence of the Raymont patent fall within the scope of the Rule. Allowing evidence of subsequent remedial measures to be discovered by Vardon would create a disincentive for Dunlop to discontinue the infringing conduct, as allowing discovery would provide Vardon the rope with which to hang Dunlop on a patent infringement charge.

Vardon contends that the information is discoverable to show a willful infringement of the Raymont patent by Dunlop. Leaving aside the issue of whether Vardon should be allowed discovery at all on matters relating to a charge which has yet to be pleaded, its contention brings the evidence sought more directly within the scope of the Rules prohibition, not outside it. 35 U.S.C. § 284 allows up to triple damages where a finding of willful infringement is made. Bad faith conduct on the part of the infringer is key to a finding of willful infringement. *Deere & Co. v. Int'l Harvester Co.,* 658 F.2d 1137, 1146 (7th Cir.1981). "Bad faith" conduct is by definition blameworthy conduct, and thus comes far closer to traditional notions of "culpable conduct" as used in Fed.R.Evid. 407. The evidence sought by Vardon is not reasonably calculated to lead to the discovery of any other evidence but that relating to the culpability of Dunlop for allegedly infringing on the Raymont patent. Therefore, Vardon's motion to compel an answer to Interrogatory No. 4 of its Second Set of Interrogatories will be denied.

## V. PLAINTIFF'S REQUEST FOR ADMISSIONS

Vardon has submitted two requests to admit to Dunlop. Request No. 1 seeks an admission that Dunlop manufactured, assembled, or sold a metal-wood golf club having a reinforcing structure on its striking face consisting of a cell structure created by two bars intersected by three bars, as described in the Raymont patent. Request No. 2 presupposes a positive answer to the first request, seeking the number of units so manufactured and assembled or sold by Dunlop.

Dunlop has denied manufacturing, assembling, or selling metal woods having the structure described in the Raymont patent. Vardon is seemingly unhappy with Dunlop's denial and seeks to compel some other response. Nonetheless, we find that Dunlop's response fairly meets the substance of Vardon's request, as Dunlop has denied each and every specific sub-part of the request to admit, and that is all that is needed. *Cf.,* Charles A. Wright and Arthur A. Miller, Federal Practice & Procedure, § 2260 (1970) ("A denial of a matter on which an admission has been requested must fairly meet the substance of the requested admission.") That part of Dunlop's response specifically referencing the Raymont patent in its denial was appropriate because under Fed.R.Civ.P. 36(b) an admission made pursuant to Rule 36 is deemed conclusively established for that litigation. In any event, an admission regarding a structure other than the one covered by the Raymont patent would have no relevance. Accordingly, we find Dunlop's response to plaintiff's Request for Admissions 1 and 2 is sufficient under Fed.R.Civ.P. 36 and, as such, Vardon's motion to compel in this regard will be denied.

## VI. CONCLUSION

For the reasons set forth above, PLAINTIFF'S MOTION UNDER RULE 37 TO COMPEL DUNLOP TO RESPOND TO CERTAIN OUTSTANDING REQUESTS FOR PRODUCTION OF DOCUMENTS

654

AND INTERROGATORIES is GRANTED in part and DENIED in part as follows:

Plaintiff's motion to compel a response to Request No. 1 of its Second Request For Production is granted in part only to the extent that Dunlop will be required to produce only those golf club heads in its possession, custody, or control which were in production from March, 1985 through the date of the expiration of the Raymont patent.

Plaintiff's motion to compel a response to Request No. 2 of its Second Request For Production, and Request Nos. 1, 2, 14, 15, 16, 18, 23, and 28 of its Fourth Request for Production is DENIED. Plaintiff's motion to compel answers to Interrogatory No. 1 of Plaintiff's First Set of Interrogatories and Interrogatories 1 and 4 of its Second Set of Interrogatories is DENIED.

Finally, PLAINTIFF'S MOTION UNDER RULE 37 TO COMPEL DUNLOP TO RESPOND TO OUTSTANDING REQUESTS FOR ADMISSIONS is DENIED.