**GENERAL MOTORS CORPORATION,**
Relator,

v.

**The Honorable J. Ray GAYLE, III,
Judge, 239th Judicial District, Harris County, Texas, Respondent.**

No. 14–96–00101–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 6, 1996.

**224**

Scott Lassetter, Jonathan W. Jordon, Houston, John R. Gilbert, Angleton, Robert William Higgason, Houston, for appellants.

Richard P. Hogan, Jr., James W. Karel, Joel Randal Sprott, George P. Hardy, III, Dennis R. Mundy, David P. Willis, David W. Holman, Houston, for appellees.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

General Motors Corporation ("GM"), seeks a writ of mandamus directing Judge J. Ray Gayle III, to vacate three orders (1) overruling GM's objection to proceeding to trial on the nonjury docket, (2) denying GM's motion for continuance, and (3) allowing the plaintiffs and their representatives to attend certain crash tests performed by GM's expert witnesses. We deny the petition for writ of mandamus.

### Mandamus Standards

■ Mandamus issues only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). Such a restriction on mandamus is necessary to preserve orderly trial proceedings and prevent constant interruption of the trial process by appellate courts. *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex. 1994). To show an abuse of discretion, the relator must establish that the trial court (a) could reasonably have reached only one decision in ruling on a fact issue or matter committed to the trial court's discretion, and failed to do so, or (b) failed to correctly determine what the law is or apply it to the facts. *Walker,* 827 S.W.2d at 840.

■ An appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ. *Id.* at 842. In a discovery context, a party will not have an adequate remedy on appeal from an erroneous ruling of a trial court where the appellate court would not be able to cure the trial court's error, such as when the trial court orders disclosure of privileged information which will materially affect the rights of the aggrieved party. *Id.* at 843. An adequate remedy on appeal will also be lacking where the party's ability to present a viable claim or defense at trial is so vitiated or severely compromised by the trial court's discovery error that conducting trial would be a waste of judicial resources. *Id.* A remedy by appeal is also inadequate where the trial court disallows discovery, the missing discovery cannot be made part of the appellate record, and the reviewing court is thereby unable to evaluate the effect of the trial court's error from the record before it. *Id.* at 843–44.

### Jury Trial and Continuance

This proceeding arises from a personal injury suit filed by the plaintiffs and real parties in interest, Manuel and Maria Delarosa, against GM. The Delarosas allege that a defective seat belt in Mr. Delarosa's 1983 GM truck unlatched in a 1988 traffic accident and caused or contributed to the severe injuries he suffered.

■ GM alleges that a co-defendant in the case demanded a jury in his answer,[1] but, unbeknownst to GM, never paid a jury fee. The case was originally set for trial preferentially on July 12, 1993, which was a civil jury trial week for the 239th District Court according to the 1993 Brazoria County Court Schedule. Prior to that date, GM alleges that several communications took place between counsel for the parties and the trial judge reflecting a common understanding that the case would be tried to a jury.[2] The trial date was thereafter reset several times, most recently on the "try or dismiss" docket on January 3, 1996.[3] GM alleges that the court's notice of this trial setting did not indicate whether the case would be on the jury or nonjury docket for that date.

At the January 3 docket call, the Delarosas announced "ready" and GM moved for continuance due to outstanding discovery. The trial court denied the continuance and announced that, since no jury fee had been paid, a nonjury trial would begin on January 5. The trial court further stated that, following opening statements on January 5, trial would be recessed to allow completion of discovery. Later on January 3, GM filed a jury demand, paid a jury fee, and filed a written motion for continuance and objection to the nonjury trial.

At the hearing on these matters on January 5, the trial court denied the jury request since it was filed less than 30 days before trial.[4] In doing so, the judge stated:

Now I will let both [counsel for the Delarosas and GM] know, so there won't be any misunderstanding, I know this is a six year old case. I know this case still has some discovery that needs to be done. . . . I didn't realize this was a non-jury case until right before the nonjury docket. I'm not going to shanghai or stonewall anybody from being able to present their case. At the same time, however, I can try this case probably in half the time it would take for a jury to try this, and quite candidly, can probably do just as good a job, and think the big difference is emotions probably won't enter my decisions like a jury might have. So I don't intend to take this case off the nonjury docket. . . . I will work with the lawyers throughout this case to give everyone adequate time to present their full case, but I intend to proceed with opening statements today and then recess this case for a short period of time to start hearing the first witness. I will tell all sides also that I don't intend necessarily to commit to try this case on a continuous day-by-day basis. I may recess it for two or three weeks, hear a couple of days of testimony, and come back in a week or so. It may be that certain experts, if I allow late designations, may need to be deposed.

In support of its motion for continuance, GM argued that the Delarosas still had outstanding 130 discovery requests to GM and a motion to attend GM's crash testing,[5] and that considerable discovery in the case remained incomplete pending resolution of

1. A jury request and jury fee payment by one party inures to the benefit of all other parties to the suit, even if the requesting party is absent at trial. *See White Motor Co. v. Loden,* 373 S.W.2d 863, 865 (Tex.Civ.App.—Dallas 1963, no writ). In this case, the alleged "demand" apparently consisted of the following statement in the original answer of defendant Christopher Carl Brousssard: "As provided in Rule 92 of the Texas Rules of Civil Procedure, Defendant enters his general denial of matters pleaded by Plaintiff *and asks that these matters be properly decided by* this Honorable Court *and jury."* (emphasis added).

2. In support of this proposition, GM cites a 1992 letter from counsel for the Delarosas to the trial court transmitting a copy of a request to retain the case. In describing the general nature of the lawsuit to the court, a sentence in that letter

begins "The issues to be presented to the Court *and jury* will involve defective seat belts . . . ." (emphasis added). GM also claims that prior to the July 1993 setting, counsel for the Delarosas and GM met in the trial judge's chambers and discussed how long it would take to try the case to a jury and other matters specific to a jury trial. GM alleges that the trial judge even joked at that time that he could shorten the trial if counsel would agree to try it nonjury.

3. The record does not reflect whether the trial was reset on the jury or nonjury docket for the settings between July of 1993 and January of 1996.

4. *See* Tex.R. Civ. P. 216(a).

5. This is discussed later in this opinion.

those issues. GM complained that it was inconsistent for the Delarosas to announce ready for trial and for the trial court to begin trial while allowing the Delarosas to continue to pursue significant discovery. GM also argued that a continuance was justified due to its misunderstanding concerning the non-jury trial setting.

The trial court denied GM's motion for continuance and announced that there would be another hearing on January 10 to resume consideration of the discovery issues. After hearing opening arguments, the trial court recessed trial until January 29.

In support of its petition for writ of mandamus, GM argues that (1) it had no notice of a nonjury setting until January 3, 1996, the day it filed the jury fee, (2) the trial court, the clerk's office, and the other parties contributed to GM's misunderstanding that the case was set for jury trial, and (3) under such circumstances, the right to a jury trial "should not be sacrificed simply to shift the trial into the Plaintiffs' preferred forum." GM further argues that the postponement of trial until January 29 was a pretext to allow further discovery to be conducted before trial without allowing GM the 30 days needed for its jury request to become timely.

■■■ In civil cases, the right of trial by jury is not automatic but arises only where a party has demanded it and paid the applicable jury fee. *See* TEX. CONST. Art. V, §§ 10, 15; TEX.R. CIV. P. 216.[6] To be effective, the demand and payment must be made not less than 30 days before the date set for trial. TEX.R. CIV. P. 216(a).[7]

6. The economy-minded constitutional convention of 1875 felt that in civil actions justice could be obtained without jury trial and that the cost of trial by jury in such cases was its main drawback. TEX CONST. Art. V, § 10 interp. commentary (Vernon 1993).

7. An untimely request for a jury trial becomes timely when trial is thereafter reset more than 30 days after the request. *Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex.1991) (per curiam). An untimely request has also been held to become timely during the time the requesting party removed the case to federal court and it was remanded. *See Ricardo N., Inc. v. Turcios de Argueta*, 907 S.W.2d 423, 429 (Tex.1995). Error in

■■■ In this case, it is undisputed that no jury fee was paid 30 or more days before the January 3, 1996 trial setting. Therefore, the issue before us is not whether the trial court erred in denying a jury trial, but whether it erred in denying a continuance to allow GM's jury fee to become timely.

In *Higginbotham v. Collateral Protection, Inc.*, 859 S.W.2d 487 (Tex.App.—Houston [1st Dist.] 1993, writ denied), the First Court of Appeals held that a trial court erred in denying a continuance to allow a jury request to become timely where mistakes on the part of the trial court's personnel contributed to the defendant's misunderstanding that the case was set for jury trial. In particular, the clerk's office had advised the defendant by telephone that the case was set on the jury docket, and the court coordinator had sent at least two notices that the case was set for jury trial. *Id.* at 490.

In this case, apart from setting the case for a jury trial week in 1993, there is no evidence that the trial court gave any other indication to the parties that the case was set on the jury docket. In addition, a deputy district clerk from Brazoria County testified that the case was shown on the nonjury docket in the August 1995 computer printout, that notification of this nonjury trial setting should have been sent to GM's counsel, and that, if GM's counsel had called to inquire, they would have been told the case was on the nonjury docket. Nevertheless, both GM and the trial judge misunderstood that the case was set for jury trial until it was too late for a jury trial to be requested.

■■■ However, as illustrated by *Halsell*, error in denying a jury trial can be remedied on appeal. *See Halsell*, 810 S.W.2d at 371.[8]

refusing to grant a jury trial when properly requested is harmless only if the record shows that no material issues of fact exist and an instructed verdict would have been justified. *Halsell*, 810 S.W.2d at 371.

8. In *Simpson v. Stem*, 822 S.W.2d 323, 324–25 (Tex.App.—Waco 1992, orig. proceeding), mandamus was granted for denial of a jury trial. However, since that decision was reached before the Texas Supreme Court re-emphasized the mandamus requirement of no adequate remedy by appeal in *Walker v. Packer*, 827 S.W.2d 833 (Tex.1992), the precedential value of *Simpson* on this issue is unclear.

The decision in *Higginbotham* was also reached on appeal rather than mandamus, and we are aware of no Texas case in which mandamus has been granted for the denial of a continuance to allow a jury request to become timely. Thus, even if an abuse of discretion can be shown on this issue, GM has not demonstrated that its remedy by appeal would be inadequate. Similarly, with regard to GM's request for continuance based on incomplete discovery, it is not possible for us to determine in advance what specific harm, if any, GM might suffer at trial as a result of the incomplete discovery. Under these circumstances, we are without an adequate basis to grant mandamus relief for the denial of GM's request for continuance.

### Discovery Order

At the request of the Delarosas, and over the opposition of GM, the trial court entered an order (the "discovery order"), the pertinent provisions of which are as follows:

2. Plaintiffs are allowed to have representatives, *i.e.*, a videographer, a photographer, an attorney, and one expert, present at any crash test or sled test or any test involving vehicle-to-vehicle collisions conducted by General Motors that may pertain to this case.

3. For any test governed by this order, notices shall be given one week in advance of the test by General Motors to the plaintiffs' attorneys.

4. Plaintiffs' representatives, *i.e.*, a videographer, a photographer, an attorney, and one expert, may attend the testing and must be afforded adequate and reasonable time prior to the test to inspect, measure, videotape, and photograph the test vehicle, dummies, cameras, instrumentation, test set-up, and other physical equipment associated with the test.

5. Plaintiffs' representatives, *i.e.*, a videographer, a photographer, an attorney, and one expert may photograph, videotape, and film the test itself.

6. Neither plaintiffs, their attorneys, representatives, or experts may question any of General Motors' experts, witnesses, representatives, or attorneys who may be present at the crash testing.

7. Any testing performed by purely consulting experts, whose testimony will not be offered at trial or form any basis of any testimony at trial, and whose tests and opinions will not be communicated to or form the basis of establishing any testing parameters, criteria, or conditions for any test, shall not be governed by the terms of this order and need not comply with this order. In other words, if General Motors decides to conduct sled tests, vehicle-to-vehicle tests, or crash tests purely, solely, and strictly for consultant purposes with consulting experts, then neither the plaintiffs, their attorneys, experts or consultants shall be allowed to be present at this consultant-only testing.

8. If any crash tests or sled tests or any test involving vehicle-to-vehicle collisions are performed with consulting experts, or any discussions occur regarding such tests, no expert designated by General Motors—that is, no testifying expert—is allowed to be present. Nor may General Motors, its representative, attorneys, consultants, or any third-parties communicate, directly or indirectly, the results, format, or testing parameters to any testifying expert or any expert whose testimony will form the basis of any trial testimony.

9. The court and any opposing party must be notified at least three working days in advance of any sled, crash, or vehicle-to-vehicle testing conducted for consulting experts only. The notices shall advise the court and any opposing party that the testing is for consultant purposes only.

10. Any test to be conducted for consultant purposes only—including (1) the parameters and set-up for the testing, (2) the criteria for the testing, (3) any measurements for the testing, (4) the speed of the testing vehicles, or sled, and (5) any other preliminary matter

relating to the parameters of the testing—must be filmed or videotaped. After the testing has been filmed or videotaped, the film or videotape must be filed with the court under seal. Then, if any later crash tests, sled tests, or vehicle-to-vehicle testing is conducted, and these tests are substantially similar to the consultant-only tests in any regard involving speed, results, changes in velocity, or related matters, then the court reserves the right to disallow the use in evidence of the testing based upon the consultant-only test guidelines. The purpose of this paragraph is to prevent any party's conducting numerous tests with consulting-only experts until a favorable result is determined, and then to redesignate that testing as a sled, crash, or vehicle-to-vehicle test for designated testifying experts.

11. If the plaintiffs choose to conduct any crash test, sled test, or vehicle-to-vehicle test with dummies or anything else to simulate seat belt partings or any of the issues in this case, representatives of General Motors will be entitled to the same protections in this order, upon the filing of a proper motion.

The effect of this order, as it related to tests conducted by consulting experts, was clarified during the January 10 hearing:

[GM COUNSEL]: If we run a test for purely consulting purposes, . . . and then a week later we want to run a similar test for litigation purposes, we can't do that?

THE COURT: That's right.

[GM COUNSEL]: Even though the first test did not set the parameters for the later test?

THE COURT: There's no way that you can determine whether the second test had its parameters set by the first test until you have run the first test. So what happens is, if you run the first test and it proves unfruitful and then you run another test and it proves unfruitful for General Motors, and you run another test and it proves fruitful, these are strictly consulting tests, but now you know what the preliminary parameters are as far as how to set up the third test that you want to do with the designated experts being present, and that ain't [sic] fair. That's what I'm trying to avoid is give you four or five bites of the apple. . . . If they are similar, I'm not going to allow them.

[GM COUNSEL]: Problem with that, Judge, if I may, is that there's only one accident . . . we're trying to replicate. So we're going to try to replicate it every time we run a test. You are limiting us, if we choose to run a consultant, to only one consultant test and the game is over.

THE COURT: Easy thing to do is let them have someone present at all the tests and that solves the whole thing.

[GM COUNSEL]: Then we have taken away our right to evaluate the case by running a consultant only test.

THE COURT: If you run a consultant only test and evaluate your case, I don't have a problem. But if you run a consultant only test and it proves favorable and then you want to use that same test later on down the line with a testifying expert, that's what I'm saying you can't do. . . .

[GM COUNSEL]: Even if the testifying experts never knew about the first consulting expert only test?

THE COURT: That's right, because you are having the benefit of already having done it and seeing the results of it. Let's say you do three of them. Two are unfavorable to you and you threw them out and used the third one. That ain't [sic] fair. That's what I'm trying to prevent. . . .

The whole purpose of these tests is to determine if the seatbelts came unbuckled. . . . So if that's the major issue in the case . . . we just let everybody look at them. . . . There's [sic] no surprises. There's [sic] no hidden agendas. And it's all out in the open. . . . And any way it goes, it's probably going to enhance settlement.

GM contends that crash tests conducted by its consulting experts are protected by the attorney work product privilege because, in having the tests conducted, GM's attorneys

select the test parameters and work with experts for the purpose of testing each side's theory of the case. In addition, it argues that it is entitled to consult with and perform tests with consulting experts without threatening the admissibility of subsequent similar tests or the testimony of testifying experts who may wish to rely upon it. GM asserts that this is necessary, among other things, to decide whether to defend or settle the case and decide which expert testimony to present at trial.

## Work Product Privilege

 Subject to certain exceptions not applicable here, the work product of an attorney is privileged and exempt from discovery. *See* TEX.R. CIV. P. 166b(3)(a). The main purpose of the work product privilege is to "shelter the mental processes, conclusions, and legal theories of the attorney, providing a privileged area within which the lawyer can analyze and prepare his or her case." *Owens–Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 750 (Tex.1991). However, the protection granted under the work product doctrine does not extend to facts of the case the attorney may acquire. *Id.* n. 2. Thus, portions of an attorney's notes from conferences with a witness have been held discoverable where the notes contain only neutral recitals of facts without commentary and do not show how the facts will be used or otherwise suggest trial strategy. *See Leede Oil and Gas, Inc. v. McCorkle*, 789 S.W.2d 686, 687 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding). However, if a document is privileged or exempted from discovery, the fact that certain information within the documents may be discoverable through other means does not overcome the privilege as to the remainder. *Keene Corp. v. Caldwell*, 840 S.W.2d 715, 720 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding). In Texas, the work product privilege contains no exception for substantial need [9] and is of continuing duration and thus not applicable solely to the lawsuit in which it arose. *Owens–Corning*, 818 S.W.2d at 751–52.

We have found no Texas cases which have addressed whether a party is entitled to attend tests conducted by opposing consulting experts, however, at least two federal trial court decisions have found such tests to be privileged work product. In *Donohoe v. American Isuzu Motors, Inc.*, 157 F.R.D. 238 (M.D.Pa.1994), the court denied the plaintiff's motion to attend any crash tests performed by the defendants in the absence of (i) a showing that reports of methodology and results would not be adequate, (ii) a showing of other substantial need, or (iii) a showing of a lack of alternative means for obtaining the information. *Id.* at 245.

Similarly, in *Shoemaker v. General Motors Corp.*, 154 F.R.D. 235 (W.D.Mo.1994), the plaintiff moved to attend all vehicle testing performed by GM in the case to ensure the integrity of the tests and to prevent GM from conducting numerous tests to achieve one positive result. In denying the motion, the court said, "The decision of what to test and how is essentially a working-out of the defendant's interpretation of facts and testing its defenses. Those processes involve either the attorney's mental processes or the opinions of consulting experts. Both are protected." *Id.* at 236. The court further stated that allowing the plaintiff's lawyers to be present at the tests would "intrude impermissibly on the development of defendant's case," that the plaintiff's fears concerning the integrity of the tests did not constitute exceptional circumstances, and that the plaintiffs would, in effect, receive adequate discovery through the opportunity to depose both testifying and non-testifying experts knowledgeable about any tests offered into evidence. *Id.*

In a third federal decision, *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641 (N.D.Ill.1994), Vardon sued for infringement of a patent covering part of a golf club head. It requested various information and samples from tests conducted by third-party defendant Dunlop Slazenger Corporation in connection with the case. In denying the request on the basis of work product privilege, the court reasoned that the information re-

---

9. By contrast, under the Federal Rules of Civil Procedure, a showing of exceptional circumstances is an exception to both the work product

privilege and consulting expert exemption. *See* FED. R. CIV. P. 26(b)(3), (b)(4)(B).

flected the mental processes of Dunlop's attorneys in selecting which clubs to test, *i.e.*, which clubs they believed potentially infringed on the patent, and, thus, their assessment 'of Dunlop's potential liability in the case. *Id.* at 646–47. The court further noted that the selection of the tests would reflect the attorneys' strategy in defending the case, and that attorneys should not be put to the choice of preparing adequately or revealing their strategies. *Id.* at 646, 648.

■ In this case, GM contends that parameters of the crash tests such as distance, angles, speed, and braking are set by its attorneys in collaboration with its experts in order to test each side's theories of the case, and, thus, that the tests reveal mental impressions, conclusions, and legal theories of its attorneys. However, although crash tests have previously been conducted in this and other lawsuits, GM has not specified how the parties' theories of the case might vary or how the test parameters might vary as a result of those divergent theories. Moreover, GM argued to the trial court that there was only one accident, and that the conditions of that accident are what it tries to replicate in every crash test. This would suggest that parameters of the tests may not vary greatly and may be dictated primarily by the facts of the case rather than tactical considerations. In any event, GM has not presented an adequate record in this proceeding for us to conclude whether its crash tests in this case would reveal attorney work product. Moreover, to the extent that GM's crash tests are attended by experts who have previously been designated by GM as testifying experts, the crash tests would not be protected by work product privilege.[10] On the other hand, to the extent the tests are attended only by consulting experts, the law regarding consulting experts, discussed in the following section, would be more specifically applicable than that regarding the work product privilege.

10. This is not to say that tests, even if not protected by work product privilege, are discoverable as they are occurring rather than after the fact. However, for the reasons set forth below in connection with consulting experts, we believe that any such issues can be adequately addressed on appeal.

## Consulting Expert Exemption

■ The identity, mental impressions and opinions of an expert who has been informally consulted or specially employed by a party in anticipation of litigation or preparation for trial but who will not be called to testify at trial as an expert witness are privileged and exempt from discovery unless that information is reviewed by a testifying expert. TEX.R. CIV. P. 166b(3)(b). The consulting expert exemption originated from the attorney work product privilege. *Axelson v. McIlhany*, 798 S.W.2d 550, 554 n. 8 (Tex. 1990). It does not protect experts who gain factual information from direct involvement in the incident or transaction in question, but does protect those whose only source of factual information is the consultation. *Id.* at 554.

■ The policy behind the consulting expert privilege is to encourage parties to seek expert advice in evaluating their case and to prevent a party from receiving undue benefit from an adversary's efforts and diligence. *Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 559 (Tex.1990). This "unfairness rule" recognizes that unrestricted discovery procedures would promote laziness and result in one side doing the work for both sides; it, thus, discourages "free-riding" or building one's case upon efforts of the opposing party.[11] Conversely, if the price for seeking expert consultation would be to live or die by the unknown opinion of the expert consulted, there would be reluctance to consult. *See* 8 CHARLES A. WRIGHT, ARTHUR R. MILLER, RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2032 (1994).

■ A party who hires a consulting expert must decide whether that consulting expert will be called to testify and, if so, may be compelled to indicate that within a reasonable and specific time before trial. *See*

11. See Kathleen M. Brennan, Note, *Must the Show Go On? Defining When One Party May Call or Compel an Opposing Party's Consultative Expert to Testify,* 78 MINN. L.REV.1191, 1197 (1994) (citing Jack H. Friedenthal, *Discovery and Use of an Adverse Party's Expert Information,* 14 STAN. L.REV. 455, 479 (1962)).

TEX.R. CIV. P. 166b(2)(e)(3). However, the trial court must give a party employing a consultant sufficient time to develop his case before making this designation so that the decision regarding the use of the expert can be made intelligently. *Werner v. Miller*, 579 S.W.2d 455, 456 (Tex.1979). To hold otherwise would prevent either party from employing a consultant without the risk of furnishing a potential expert witness or at least a theory of recovery or defense to the opposing party. *Id.*

In this case, the practical difficulty with the discovery order is that it requires GM to allow the Delarosas to attend any crash test conducted by a consulting expert in order to preserve its opportunity to use that test or a similar one [12] at trial. Moreover, this decision must be made before GM can know whether the test will prove favorable or unfavorable to its position. Because of this inherent gamble, GM is discouraged from hiring consulting experts to develop better insight into the merits of the case, and the Delarosas may get a "free ride" from any such crash testing which might prove favorable to their position. GM is also denied an opportunity to make an intelligent decision regarding the use of experts. These circumstances defeat the fundamental policy reasons for exempting consulting experts from discovery.

However, even if entry of the discovery order was an abuse of discretion, we are not convinced that GM has no adequate remedy by appeal. To the extent, for example, that (a) GM conducts crash tests without allowing the Delarosas to attend, (b) the results are favorable enough that GM wishes to offer testing information into evidence, (c) GM complies with applicable rules of discovery,

procedure and evidence with regard to its testing information, (d) the trial court rules the testing evidence to be inadmissible for not allowing the Delarosas to attend or, for that matter, any other reason,[13] and (e) GM makes an adequate offer of proof,[14] then an appellate court will be able to address and, if necessary, cure any error by the trial court. Accordingly, we deny GM's petition for writ of mandamus.

HUDSON, Justice, dissenting.

I believe the respondent's order improperly infringes upon both the work product privilege and the consulting expert exemption.

The work product privilege found in Rule 166b of the Rules of Civil Procedure protects from discovery the mental impressions, conclusions, opinions, and theories held or considered by counsel in his preparation for trial. *Owens v. Wallace*, 821 S.W.2d 746, 748 (Tex.App.—Tyler 1992, orig. proceeding). Here, the real parties in interest contend the privilege is not violated by the respondent's order because they seek only to observe "neutral facts and testing." They argue that their presence will compromise no mental impressions or strategy of counsel. By its very nature, however, crash testing will disclose the relator's theory of the accident.

In the formulation of its defense, the relator will undoubtedly seek explanations for the plaintiff's injuries that relieve or lessen its own liability. Was the occupant of the vehicle wearing a seat belt? Was the belt properly adjusted to remove excess slack? Was the shoulder belt properly placed across the chest? At what speed did the accident occur? Were there secondary collisions? If

---

**12.** In order for evidence of an experiment made out of court and out of the presence of the opposing party to be admissible, conditions existing at the time of the occurrence in question and those existing at the time the experiment is conducted must be substantially similar, but need not be identical. *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279, 281–82 (Tex.1964). It is within the discretion of the trial court to determine whether the existence of a dissimilarity between those conditions causes evidence of the experiment to confuse rather than aid the jury, and, thus, whether the evidence should be excluded. *Id.* at 282. In this case, a consulting test and trial test which are each similar enough to the conditions of the accident to be admissible under *Williams* would arguably be similar enough to one another to render the trial test inadmissible under the discovery order.

**13.** Of course, even without the discovery order, there can be no guarantee in advance that any testing information will meet other requirements for admissibility.

**14.** *See* TEX.R. CIV. EVID. 103(a)(2), (b).

the seat belt failed, are the occupant's injuries specifically attributable to this defect? Answers to these questions may come, in part, from the results of crash tests. The tests, therefore, may help validate the relator's factual theory of the case. Observation of the test parameters will necessarily reveal the relator's defensive theory to some extent.

The proposed crash test contemplated here is in preparation for litigation. As a work product, it should be exempt from discovery. *Keene Corp. v. Caldwell*, 840 S.W.2d 715, 719 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding). Mandamus is available to prevent the disclosure of a privileged work product. *GAF Corp. v. Caldwell*, 839 S.W.2d 149, 152 (Tex.App.—Houston [14th Dist.], orig. proceeding); *Menton v. Lattimore*, 667 S.W.2d 335, 342 (Tex.App.—Fort Worth, 1984, orig. proceeding). Because the respondent's order infringes upon the work product privilege, I believe it should be set aside.

For reasons that are well stated by the majority, I also believe the respondent's order improperly abrogates the consulting expert exemption. The majority concludes that the relator has an adequate remedy by appeal. To pursue its appellate remedy, however, the relator must defy the respondent's order and conduct a crash test in private, knowing in advance that it will attempt to call a testifying expert to explain any favorable data or evidence generated by the test. Unless the relator is willing to bear the cost of conducting an "inadmissible" crash test that will serve no purpose apart from its inclusion in a bill of exception, nothing will be preserved for review. Because I do not believe the relator has an *adequate* remedy by appeal, I respectfully dissent.