In the Interest of M.C.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-015-CV

IN THE INTEREST OF 

M.A.C., JR., A CHILD

------------

FROM THE 323
RD 
DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

In this appeal from the termination of a presumed biological father’s parental rights, we are called upon to determine whether the evidence was factually sufficient to support the trial court's finding that termination of the parent-child relationship between M.A.C., Jr. and M.A.C., Jr.’s presumed biological father (appellant) was in the best interest of M.A.C., Jr.; and whether the trial court violated appellant’s constitutional right to a trial by jury.  We affirm.

Facts

M.A.C., Jr. was born to C.P. and appellant on October 10, 1994.  Appellant was fourteen when M.A.C., Jr. was born.  Appellant was first incarcerated in 1995 when M.A.C., Jr. was only a few months old, and has been incarcerated for eight years of M.A.C., Jr.’s life.  At the time of trial, appellant was incarcerated and serving an eight-year sentence for engaging in organized criminal activity.  At the time of trial, M.A.C., Jr. was nine years old and appellant had last seen M.A.C., Jr. when he was around three years old. 

C.P.’s parental rights to M.A.C., Jr. were terminated before appellant’s trial.  Appellant’s rights to another child he had with C.P. were terminated on the grounds that appellant engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child.  
See
 
Tex. Fam. Code Ann.
 § 161.001(1)(E) (Vernon 2002).  The trial court in that termination action also found that termination of appellant’s rights was in that child’s best interest.  Appellant did not contest that termination because he thought by not contesting it, his chances for keeping his rights to M.A.C., Jr. would improve. 

Appellant’s termination proceeding was a bench trial.  The trial judge ordered that appellant’s parental rights to M.A.C., Jr. be terminated and that termination was in M.A.C., Jr.’s best interest.  Appellant challenges only the best interest finding on appeal.

Best Interest

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  
Id.
 § 161.001; 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984); 
Swate v. Swate
, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.  
Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by “clear and convincing evidence.”  T
EX
. F
AM
. C
ODE
 A
NN
. §§ 161.001, 161.206(a) (Vernon 2002 & Supp. 2004-05); 
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980).  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.  
G.M.
, 596 S.W.2d at 847; 
In re D.T.
, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2001, pet. denied) (op. on reh’g).  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”  
Tex. Fam. Code Ann.
 § 101.007 (Vernon 2002).

The higher burden of proof in termination cases alters the appellate standard of factual sufficiency review.  
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002).  “[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.”  
Id
.  In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine “whether the evidence is such that a factfinder could reasonably form a firm belief or conviction” that the grounds for termination were proven.  
Id
.  Our inquiry here is limited to whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parent’s parental rights would be in the best interest of the child.  
Id
. at 28.

Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future; 

(3) the emotional and physical danger to the child now and in the future; 

(4) the parental abilities of the individuals seeking custody; 

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody; 

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and 

(9) any excuse for the acts or omissions of the parent. 

Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).  These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  
C.H
., 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  
Id.
  On the other hand, the presence of scant evidence relevant to each 
Holley
 factor will not support such a finding.  
Id.

A review of the record in this case reveals that there was sufficient evidence to support the finding that termination of appellant’s rights was in M.A.C., Jr.’s best interest.  For example, appellant hardly knew his child, had not seen him since he was three, and had been incarcerated for eight of M.A.C., Jr.’s nine years.  At the time of trial, appellant was still incarcerated and serving the remainder of an eight-year sentence.  Although appellant suggested his mother and his maternal grandparents as possible placement options for M.A.C., Jr., appellant’s relatives never visited M.A.C., Jr. in foster care or expressed formal desire to take custody of the child.

Until M.A.C., Jr. was placed with the Bradleys, M.A.C., Jr.’s foster family, he had spent the majority of his life in neglectful or abusive environments.  The Department of Family and Protective Services (DFPS) first removed M.A.C., Jr. from C.P.’s care due to neglect in 1997 while appellant was in jail.  Upon the recommendation of C.P., DFPS later placed M.A.C., Jr. in the custody of Louise White.  M.A.C., Jr. lived with White for approximately four years until DFPS removed him in November 2002 because White had severely abused him.  Criminal charges for the abuse were pending against White at the time of appellant’s trial.
(footnote: 2)  Although appellant did not have anything to do with M.A.C., Jr.’s placement with White, had it not been for appellant’s incarceration, he could have protected M.A.C., Jr. against C.P.’s neglect and White’s abuse.  
See
 
Director of Dallas County Child Protective Serv. Unit of Tex. Dept. of Human Serv. v. Bowling
, 833 S.W.2d 730, 733-34 (Tex. App.—Dallas 1992, no writ) (stating that father’s confinement, which left the children with the mother who could not care for them, endangered child).

Appellant argues that imprisonment alone is not a sufficient basis for termination, but this argument ignores that appellant voluntarily engaged in criminal conduct on at least four occasions.
(footnote: 3)  
See Tex. Dept. of Human Serv. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987) (holding imprisonment is a factor to be considered by the trial court on the issue of endangerment); 
see also Bowling
, 833 S.W.2d at 733-34.  Moreover, appellant conceded that his continuous arrests and incarcerations have prevented him from caring for M.A.C., Jr. and have left M.A.C., Jr. in potentially dangerous situations.  Although appellant has made some plans for the future in that he completed anger management, vocation, and parenting classes, and received his GED while incarcerated, he admitted he does not know when he will be released from prison and free to care for M.A.C., Jr. 

M.A.C., Jr.’s current foster family has plans to adopt M.A.C., Jr. if appellant’s rights are terminated.  M.A.C., Jr.’s DFPS caseworker testified that M.A.C., Jr. had bonded with his foster family, was doing well with them, seemed happy, was going to school, participated in extracurricular activities, and wanted his last name to be changed to Bradley, the foster family’s name.  When M.A.C., Jr.’s caseworker asked him about his father he said he “kind of remembered” appellant, but when pressed for details, M.A.C., Jr. could not provide any.  M.A.C., Jr.’s caseworker opined that it was in M.A.C., Jr.’s best interest to terminate appellant’s parental rights so that M.A.C., Jr. could be adopted by the Bradleys. 

After a review of the entire record, we hold that the evidence is factually sufficient to support the trial court’s finding that termination of appellant’s rights were in the best interest of M.A.C., Jr.  Appellant’s first point is overruled.

Jury Trial

In his second point, appellant argues that he was deprived of his constitutional due process right to a trial by jury because his termination trial was held before the judge instead of a jury.  He contends that in proceedings for termination of parental rights, the court should require an express waiver of trial by jury, as in criminal cases.

The family code provides that a party has a right to demand a jury trial in certain proceedings, including those for involuntary termination of parental rights.  
Tex. Fam. Code Ann.
 § 105.002 (Vernon Supp. 2004-05).  Rule 216(a) of the rules of civil procedure governs this right. 
 
Tex. R. Civ. P.
 216(a); 
see Gen. Motors Corp. v. Gayle, 
924 S.W.2d 222, 226 (Tex. App.—Houston [14th 
Dist.] 1996, orig. proceeding)
 (stating that the right to a jury trial is not automatic, but, rather, arises only where a party complies with the rules”).  Rule 216(a) provides:

No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance.

Tex. R. Civ. P.
 216(a).

The requirement of an express waiver of jury trial in criminal cases lies in the Texas Code of Criminal Procedure, not the United States Constitution.  
In re K.C.
, 23 S.W.3d 604, 608-09 (Tex. App.—Beaumont 2000, no pet.); 
see
 
Tex. Code Crim. Proc. Ann. 
art. 1.13 (Vernon Supp.2004).  In contrast, a jury trial is provided only upon a timely request in family courts.  
See
 
Tex. Fam.Code Ann.
 § 105.002; 
In re T.H.
, 131 S.W.3d 598, 601-02 (Tex. App.—Texarkana 2004, pet. filed) (holding father not entitled to a jury trial, in action to terminate his parental rights, where father did not request a jury trial until after the non-jury trial had commenced).  Because the family code does not require an express waiver of trial by jury and because appellant did not request a jury or object to the bench trial, we overrule appellant’s second point.  

Conclusion

Having overruled both of appellant’s points we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL F: LIVINGSTON, GARDNER, and WALKER, JJ.

DELIVERED: August 24, 2004

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
School personnel reported White for abuse.  M.A.C., Jr. was hospitalized for injuries he sustained after White beat him with a buckled belt, fractured his foot, gave him a black eye, caused severe bruising on his face, legs, and buttocks, and oozing sores on his buttocks. 

3:
Appellant had an extensive criminal history starting when he was a juvenile.  Appellant was arrested in 1995 for an assault, convicted and  sentenced to the custody of the Texas Youth Commission (TYC) for nineteen months.  Appellant was out of custody for one month when he was arrested and convicted again for assault and served nine months in TYC.  In March of 1998, appellant was convicted of burglary of a vehicle and sentenced to forty-five days’ confinement in the Tarrant County Jail.  Appellant was out of jail approximately three months when he was convicted for engaging in organized criminal activity and sentenced to eight years’ confinement starting in July 1998.